```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF IOWA
                       WESTERN DIVISION
```

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | ) ) ) | NO. 1:11-cv-00021-JAJ-RAW |
| Plaintiff, | ) ) | |
| CINCINNATI INSURANCE COMPANY, | ) ) | |
| Intervenor Plaintiff, | ) ) | REPORT AND RECOMMENDATION ON REQUEST FOR HEARING ON |
| vs. | ) ) | ON PROPERTY CLAIMED EXEMPT AND MOTION TO QUASH |
| OAKVIEW CONSTRUCTION, INC., THE OAKVIEW COMPANIES, INC., n/k/a TOC, INC., OAKVIEW INVESTMENTS CORPORATION, n/k/a CHASE INVESTMENT GROUP, INC., OAKVIEW CONSTRUCTION INC., DBA ARMADA CONCRETE, RICHARD C. BULKELEY, Individually, and JULIE J. BULKELEY, Individually, | ) ) ) ) ) ) ) ) ) ) ) | EXECUTION OF DEFENDANTS RICHARD AND JULIE BULKELEY |
| Defendants. | ) | |

The above resisted motion [88] is before the Court. On March 21, 2013 a stipulated judgment was entered against the Bulkeleys and other defendants in the amount of $1,871,200.42 [85]. On September 24, 2013 a general writ of execution directed to the Sheriff of Montgomery County, Iowa [87] was issued by the Clerk of Court. The sheriff evidently served a notice of garnishment on Bank Iowa where the Bulkeleys have two bank accounts and a safe deposit box. The accounts and contents of the safe deposit box are being held by the bank as subject to garnishment. The Bulkeleys received notice of the garnishment on October 4, 2013. The present motion

was filed on October 10, 2013.[1] The same date the motion was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The request for hearing was granted and hearing was held November 20, 2013 on a stipulated record. No testimony was taken. The hearing was reported. The Court held the record open for a period of time to give the parties an opportunity to provide additional authority. The motion is now fully submitted. The undersigned FINDS AND RECOMMENDS AS FOLLOWS on the issues presented.

Bank Accounts

The accounts in question are referred to as the 4854 and 8872 accounts. The Bulkeleys maintain that the money in the accounts is derived from Social Security benefit payments and distributions from a 401k retirement plan[2] exempt from execution under Iowa Code § 627.6(8)(a), (e). Certain things are not disputed: (1) In this case the procedure on execution and exemptions from execution are governed by the law of the forum state. Fed. R. Civ. P. 69(a)(1); (2) Exempt funds deposited in a bank account retain their exempt status;[3] and (3) The distributions

---

[1] Though captioned as a motion to quash execution, there is no basis to quash the writ of execution. The Court views the motion as seeking to quash the garnishment of the accounts and safe deposit box so that both may be released to the Bulkeleys.

[2] The Charles Schwab Bank is trustee of the plan.

[3] *See In re Caslavka*, 179 B.R. 141, 147 (Bankr. N.D. Iowa 1995)(citing *MidAmerica Savings Bank v. Miehe*, 438 N.W.2d 837, 839 (Iowa 1989)).

from the 401k plan were "a payment under a pension, annuity or similar plan or contract on account of . . . age" for the purposes of the exemption in § 627.6(8)(e), and the Social Security benefit payments are exempt under § 627.6(8)(a).

Liberty Mutual's argument with respect to the bank accounts is that the bank records before the Court show that at the time of the deposit of exempt funds there was a previous balance from unknown sources, there is no evidence where the previous balance money came from, and as a consequence the deposit of the exempt funds in the accounts commingled the money with non-exempt funds and lost their status as exempt assets. The Bulkeleys respond that the previous balances prior to deposit of the exempt funds were low, withdrawals have depleted most of the funds in the accounts, and the Court should consider that money first in the accounts was first out in the withdrawals with the result the balances in the accounts at the time of garnishment should be viewed as entirely exempt funds.

The record contains bank statements for account 4854 from July 8, 2013 to October 9, 2013 at which point the account had been garnished. (Attach. to Def. Resp. to Resist. [92-1]). The opening balance on July 8, 2013 was $7,009.[4] All deposits during the covered period were exempt Social Security benefit payments and

---

[4] All figures in this report and recommendation have been rounded to the nearest whole dollar.

exempt 401k distributions in the total amounts of $13,982 and $84,500 respectively, a total of $98,482. During the covered period $11,076 was transferred to account 8872. The balance at the time of garnishment was $3,327.

Only one bank account statement is in the record for account 8872. (Stip. Ex. 4 [97-1]). The statement is dated October 9, 2013 by which time the account had been garnished. The opening balance was $1,968. The only deposit was an exempt 401k distribution in the amount of $14,093. The balance at the time of garnishment was $8,047.

The Court has not been referred to a case which holds, as Liberty Mutual appears to argue, that unless each dollar in an account can be traced to exempt funds the entire account is subject to garnishment. In this view any commingling of exempt and non-exempt funds no matter how small the latter in relation to the former makes all subject to garnishment.

The absolute no commingling principle argued by Liberty Mutual would not accord with "the general rule that courts should construe exemption statutes liberally in favor of the debtor in light of the purposes of the exemption." *In re Caslavka*, 179 B.R. 141, 143 (Bankr. N.D. Iowa 1995); *see Frudden Lumber Co. v. Clifton*, 183 N.W.2d 201, 203 (Iowa 1971). That purpose in the case of retirement income is to "protect payments which function as wage substitutes after retirement, to support the basic requirements of

life at a time when the debtor's earning capacity is limited." *Caslavka*, 179 B.R. at 143-44.

Liberty Mutual's argument proceeds on the assumption that in every case any degree of commingling in an account makes it impossible for a creditor to determine what funds are exempt. No doubt there are cases where commingling of exempt and non-exempt funds over a period in which both exempt and non-exempt funds were deposited would make it difficult if not impossible to make a reasoned allocation. In the circumstances here, however, where from a known date over a brief period all deposits were exempt funds the Court believes it is possible to make a reasoned allocation by *pro rata* calculation.

The Bulkeleys first-in first-out argument has the virtue of simplicity, but it is based on an assumption that would deny a creditor recovery where the exempt funds may reasonably be separated from non-exempt. Where possible the interests of both the judgment creditor and judgment debtor should be accommodated.

Here we have account histories of limited duration. The opening balances are known and it is fair to assume, in the absence of any evidence to the contrary, are non-exempt funds. The balances being held by the garnishee bank are known. All of the deposits from the opening balances to the date of garnishment were of exempt funds. If the ratio of the non-exempt opening balances to the total exempt deposits in each account is applied to the balance at

garnishment a fair and reasonably accurate determination of the exempt funds can be made. Applying this equation to account 4854 results in all but $236 being exempt (opening non-exempt balance of $7,009 is .071% of $98,482 exempt deposits; .071 times $3,327 end balance yields $236). The same equation for account 8872 results in a non-exempt amount of $1,127 (opening non-exempt balance of $1,968 is 14% of $14,093 exempt deposits; .14 times $8,047 end balance yields $1,127). The undersigned will recommend that the garnishment of all funds in account 4854 be quashed except for $236 which the Court finds are non-exempt funds, and that the garnishment of all funds in account 8872 be quashed except for $1,127 which the Court finds are non-exempt funds. Accordingly, Liberty Mutual may garnish $236 in account 4854 and $1,127 in account 8872.

<u>Safe Deposit Box</u>

The Bulkeleys argue the garnishment of the safe deposit box should be quashed because garnishment was not sufficient process under Iowa Code § 524.811 to reach the property held in the box, and under the terms of the box lease the Bulkeleys have control and possession of the box and its contents, not the bank. The record does not identify the contents of the safe deposit box.

Iowa Code § 524.811 deals with adverse claims to property in safe deposit with a state bank.[5] As relevant here, to require a

---

[5] Bank Iowa is a state chartered bank. http://www.idob.state.ia.us/public/callreport/bankSearch.aspx.

state bank to recognize an adverse claim of property held in safe deposit, the person making the claim must "[o]btain and serve on the state bank an appropriate court order or judicial process directed to the state bank . . . ." *Id.* § 524.811(2)(a). The Bulkeleys argue the notice of garnishment to the bank was not process directed to it because the notice was signed by the sheriff with no specific direction from the Court in the writ of execution that it be served on the bank. (Def. Brief [98] at 5).

In Iowa judgments are enforced by execution. Iowa Code § 626.1. "Property of the defendant in the possession of another . . . may be reached by garnishment." *Id.* § 626.26. The writ of execution issued by this Court to the Sheriff of Montgomery County was without doubt judicial process. A general writ of execution typically does not direct who the officer receiving the writ should garnish. The Iowa rules state that "[t]he officer serving a writ of . . . execution shall garnish such persons as the plaintiff may direct . . . who possess property of the principal defendant." Iowa R. Civ. P. 1.304. The garnishment process is begun by notice served on the garnishee. The notice "require[s] the garnishee to retain possession of all property of the defendant in the garnishee's hands or under the garnishee's control, to the end that the same may be dealt with according to law." *Id.* Apart from the fact garnishment is a means by which an execution is carried out, the notice of garnishment is judicial process in itself because similar

7

to a summons it requires the garnishee to respond and opens a process whereby disputes about the property may be resolved. *See id.;* Iowa Code ch. 642. The notice of garnishment was "judicial process directed to" Bank Iowa within the meaning of § 524.811(2)(a).

As to the Bulkeley's second argument, their lease of the safe deposit box states that they "have control over and are in possession of [their] safe deposit box and its contents." (Stip. Ex. 5 [97-2] at 2). That control, however, is not contractually absolute. The lease also states the bank may refuse entry to the safe deposit box when "we are served with an order or other legal process in which the court or other legal authority directs us to make this refusal or affects the contents of your safe deposit box." (*Id.*) The notice of garnishment is legal process which, as it has here, may lawfully deprive the Bulkeleys of control over their safe deposit box. Even without this provision in the lease § 524.811(2)(a) restricts a safe deposit box customer's right to control and possess property in the box which is subject to an adverse claim under the statute. The safe deposit box lease does not put the contents of the box beyond garnishment directed to the bank.

More generally, the Court believes the law looks to actual possession and control rather than to what the judgment debtor and a third party have contractually agreed. Presumably the

safe deposit box is on the property of the bank in its vault. The property is in the bank's "hands," and under its actual control. Iowa R. Civ. P. 1.304. The bank has the ability to open the safe deposit box, as the lease also recognizes.

A long ago Iowa Supreme Court opinion appears to be the only time the court has spoken about the amenability of a safe deposit box to garnishment. *Farmers Savings Bank of Hartwick vs. Roth*, 195 Iowa 185, 191 N.W. 987 (1923), involved the garnishment of notes in the custody of a bank and kept in its vault, though not in a safe deposit box. In holding the notes could be reached by garnishment the court, in a *dictum* evidently to reinforce the point, stated: "A bank is subject to garnishment for the property of a customer, even when held in a safety deposit box in the bank." 195 Iowa at 188, 191 N.W. at 988. More recently, the Court of Appeals of North Carolina observed that the generally accepted rule is that "the contents of a safe-deposit box may be reached by attachment or garnishment." *Jimenez v. Brown*, 131 N.C. App. 818, 822, 509 S.E.2d 241, 244 (N.C. App. 1998)(quoting 6 Am. Jur. 2d *Attachment and Garnishment* § 100 (1963)(citing cases, now found at 6 Am. Jur. 2d *Attachment and Garnishment* § 77 at 543 (2008)). For a rationale the North Carolina court quoted from a 1925 New York Court of Appeals opinion, *Carples v. Cumberland Coal & Iron Co.*, 240 N.Y. 187, 148 N.E. 185 (1925), which reasoned that "[i]f a debtor could withdraw his property from the reach of creditors by

simply placing it in a safe deposit vault, avoidance of responsibility for obligations would be made easy, and a broad and easily accessible highway opened for escape from an effective administration of the law." *Id.* (quoting *Carples*, 240 N.Y. at 94, 148 N.E. at 187).

The Court should follow the *dictum* in *Farmers Savings Bank* which appears to be in line with the weight of authority elsewhere, such as it is. That a safe deposit box may be subject to the legal process of garnishment is the better-reasoned result, but more importantly, is contemplated by the statutory provisions in Iowa Code § 524.811 governing adverse claims to property in a safe deposit box.

IT IS RESPECTFULLY RECOMMENDED that the Motion to Quash Execution [88], viewed as a motion to quash the notice of garnishment served on Bank Iowa, be granted in part and denied in part as follows:

(1) The motion should be granted with respect to all funds of the Bulkeleys held at Bank Iowa in excess of $236 in account 4854 and in excess of $1,127 in account 8872. The bank may garnish $236 from account 4854 and $1,127 from account 8872.

(2) The motion should be denied with respect to garnishment of the safe deposit box at Bank Iowa.

IT IS ORDERED that the parties have until **March 3, 2014** to file written objections to the Report and Recommendation,

pursuant to 28 U.S.C. § 636(b)(1). *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan*, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala*, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); *Thompson*, 897 F.2d at 357.

IT IS SO ORDERED.

Dated this 11th day of February, 2014.

ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE